IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-02231-RBJ

BETTY A. STEWART,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

     Defendant.

---

## ORDER

---

The Court here reviews the Social Security Administration's denial of Betty A. Stewart's application for Disability benefits under Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision on the deadline for filing plaintiff's reply brief, March 22, 2011. The Court apologizes for the delay in resolving this case.

**Standard of Review**

This appeal is based upon the administrative record and the parties' briefs. The Court's role is to determine if the record "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998). A decision is not based on substantial evidence when "overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). It is not "mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

1

**Facts**

Plaintiff Betty A. Stewart was born on March 25, 1947.  R. at 27.  She earned her Bachelor of Science degree in Pharmacy from the University of Colorado in 1970.  R. at 209. She has a relevant work history as a pharmacist and occasionally judges air shows.  *Ibid*.  She was previously an air show pilot.  R. at 29.  Ms. Stewart applied for disability benefits on October 17, 2005, alleging disability with an onset date of February 1, 2002 due to severe back pain, headaches and multiple joint arthritis.  R. at 18, 73.  Her onset date was later amended to May 1, 2003.  R. at 18.  The administrative record documents Ms. Stewart's medical treatment.

- Matthew Rice, D.O., treated Ms. Stewart from April 2003 to December 2005.  R. at 190-200.  In 2003 Dr. Rice diagnosed degenerative joint disease based on subjective complaints.  R. at 190.  A 2004 MRI of claimant's right knee revealed degenerative changes and osteopenia.  An August 2004 total body bone scan showed several fractures likely from falls, severe arthritic changes of the second metatarsophalangeal joint space and degenerative changes in the cervical and mid thoracic spine, bilateral shoulders, bilateral thumbs, and left talonvicular joint space.  R. at 180-81.

- In December 2005 Dr. Rice completed a Multiple Impairments Questionnaire.  R. at 193-200.  He diagnosed degenerative joint disease of hands and feet, multiple sclerosis, epilepsy and chronic alcoholism.  R. at 193.  Dr. Rice opined, "in pharmacy one must get up and move around <u>constantly</u> which she can't do."  R. at 195 (emphasis by Dr. Rice). He restricted claimant's carrying or lifting of objects over five pounds and felt she had significant limits in repetitive reaching, handling, fingering or lifting.  R. at 196.  She had moderate limits on her upper extremity use and should not grasp.  R. at 196-97, 199.

- Ms. Stewart's treatment records document her acute alcoholism, that she was treated for traumatic injuries incurred while intoxicated, and that she has a history of falls.  R. at 151-61, 177, 178, 180, 188.  In January 2005 Ms. Stewart was seen in an emergency department for seizures, which Lon Miller, M.D., indicated might be from alcohol withdrawal.  R. at 170-74.  An MRI revealed possible central pontine myelinolysis or osmotic demyelination.  R. at 164-166.  Osmotic demyelination "can be seen in alcoholics and other disorders and abnormalities."  *Ibid.*  The MRI revealed lesions "very suspicious for MS" though osmotic demyelination was also a possibility.  R. at 165.

- On January 4, 2006 Ms. Stewart was examined by Consultative Examiner Christina R. Bjornstad, M.D.  R. at 201.  Dr. Bjornstad felt that Ms. Stewart's arthritic thumb could be treated conservatively, and that "she may have complete or almost complete use of both hands in the future."  R. at 202-07.  Ms. Stewart had full range of motion in her hips, cervical spine, lumbar spine, ankles, shoulders, elbows, wrists and knees.  R. at 205-06.

- On January 30, 2006 psychologist Rebecca J. Alexander, Ph.D., examined Ms. Stewart for the Commissioner.  R. at 208-13.  Dr. Alexander reported moderate impairment in Ms. Stewart's ability to interact appropriately in the workplace, respond appropriately to authority and adapt to change.  R. at 213.  Her ability to understand and remember simple and complex instructions and to sustain concentration was slightly impaired.  R. at 212.

- On April 13, 2006 Stephen J. Yemm, MD, diagnosed Ms. Stewart with diffuse osteoarthritis in her left shoulder and her feet.  R. at 294.  X-rays revealed endstage osteoarthrosis of the glenohumerol joint and anterior glenoid erosion.  R. at 292.  On May 17, 2006 Sean Grey, MD, performed a total left shoulder arthroplasty.  R. at 290-91.  By November 2006 Ms. Stewart was "doing very well. . . ."  R. at 302.

- Plaintiff had some improving shoulder pain in April 2007 from a recent injury.  R. at 304.

- April 2007 X-rays of Ms. Stewart's lumbar spine showed degenerative spondylolisthesis at L4-5 with associated facet osteoarthritis, advanced disk space narrowing L5-S1 with associated facet osteoarthritis and mild disk space narrowing at L2-3.  R. at 277-78.  No abnormal motion was noted with flexion and extension.  *Ibid.*

- In June 2007 Ms. Stewart saw Shari E. Lopez, PA-C for her low back pain and expressed interest in traction therapy.  R. at 249-53.  In August 2007 Ms. Stewart was again seen for back pain and Ms. Lopez' notes indicate that she was trying to determine insurance coverage for additional treatment with Accuspina (non-surgical therapy).  R. at 270.

- In August 2007 Ms. Lopez completed a Multiple Impairment Questionnaire.  R. at 279.  She diagnosed claimant with lumbago, degenerative disc disease of the lumbar spine, grade I spondylolisthesis, metatarsalgia and left shoulder replacement.  *Ibid.*  Ms. Stewart could sit or stand/walk for one hour in an eight-hour day, and would need to move around every 30 minutes.  R. at 281-82.  She had limitations on her ability to lift or carry more than five pounds and had significant limitations in repetitive reaching, handling, fingering or lifting.  R. at 281-82.  Ms. Stewart was going to pursue traction therapy.  R. at 283.

- Ms. Lopez completed a Lumbar Impairment Questionnaire in March 2009.  R. at 306.  Ms. Lopez reported seeing plaintiff monthly since June 2007.  *Ibid.*  Claimant had lumbago, osteoarthritis and bilateral foot and knee pain.  *Ibid.*  She had a limited range of motion in her lumbar spine and crepitus at her bilateral knees, supported by unspecified radiographs of her lumbar spine and patellofemoral grind.  R. at 307.  Ms. Lopez felt claimant could sit for four hours and stand/walk for two hours in an eight-hour day, could not sit or stand/walk continuously at work and would need to get up hourly.  R. at 308-09.

4

Ms. Stewart's initial disability claim was denied administratively.  R. at 18.  After a hearing an Unfavorable Decision was issued on January 24, 2008, which claimant appealed. *Ibid*.  The Appeals Council issued an Order of Remand on September 4, 2008 for greater discussion of whether her limitations and Residual Functional Capacity ("RFC") allowed performance of her past relevant work.  *Ibid*.  Administrative Law Judge ("ALJ") James W. Olson held a second hearing on August 25, 2009 at which Jerry Gravatt, a Vocational Examiner ("VE"), testified.  R. at 18.  The ALJ issued an Unfavorable Decision on January 27, 2010.  R. at 15.  The Appeals Council denied claimant's review request on July 21, 2010, and this appeal followed.  R. at 5.

The ALJ followed the regulatory five-step evaluation process to determine if Ms. Stewart is disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  At step one plaintiff had not engaged in substantial gainful activity since her disability onset date.  R. at 22.  At step two claimant had the following severe impairments: "Alcoholism, Degenerative disc disease lumbar spine, left shoulder pain status post arthroplasty due to endstage osteoarthritis of the left glenohumeral joint, and Personality Disorder with narcissistic traits."  R at 22.  At step three these impairments did not meet or exceed listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 23.

Step four requires an ALJ to assess a claimant's RFC to determine if the claimant is capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The ALJ made the following RFC assessment:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.1567(b) except that her ability to understand and remember simple and complex instructions is slightly impaired; her ability to sustain concentration and persistence is slightly impaired; and her ability to interact appropriately in the workplace, respond appropriately to authority and to adapt to change is moderately impaired.

R. at 25.  He found the claimant capable of performing past relevant work as a pharmacist and thus not disabled at step four of the 20 C.F.R. § 404.1520(a)(4) evaluation process.  R. at 29.

### Conclusions

This case primarily concerns the ALJ's step four analysis.  20 C.F.R. §404.1520(a)(4)(iv).  Plaintiff's claims span three subjects: whether Ms. Stewart is able to perform past relevant work, whether the ALJ properly weighted the medical opinions and whether the ALJ properly evaluated Ms. Stewart's credibility.

## I.      <u>Whether Ms. Stewart is Able to Perform Past Relevant Work</u>

Plaintiff's challenges to the ALJ's determination that she is able to perform past relevant work focus on her mental limitations.  According to Ms. Stewart's consultative psychological examination she has moderate impairment in her ability to interact appropriately in the workplace, respond appropriately to authority and adapt to change.  R. at 213.  Her ability to understand and remember simple and complex instructions and to sustain concentration was slightly impaired.  R. at 212.  Her ability to do math, her abstract thinking and her judgment were within normal limits.  *Ibid*.  Her immediate, recent and remote memory functioning were intact.  *Ibid*.  Her GAF was 60, which shows some social limitations but borders general well-functioning according to the DSM-IV.  *Ibid*.; American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text revision 2000).

Ms. Stewart claims she cannot perform a pharmacist's duties because of her limitations in understanding and remembering simple instructions and because these duties require significant customer interaction.  She alleges that the ALJ did not adequately describe the demands placed on a pharmacist or specifically compare them to her abilities.  I disagree.  The ALJ unambiguously questioned the VE regarding an individual with claimant's precise RFC,

including limits in understanding and remembering simple instructions as well as moderate impairment in appropriate social interaction.  R. at 375.  The VE testified that such an individual "could still do the position of a pharmacist" and that moderate social function impairments "would not be a problem with the education level."  R. at 376.  Notably, Ms. Stewart's counsel did not question the VE on this assessment at the hearing, even though her slight impairments were clearly at issue as the basis for the Appeals Council's remand.  R. at 377, 54-56.

On this second consideration of whether Ms. Stewart's mental impairments left her unable to perform past work the ALJ agreed with the VE's assessment that Ms. Stewart could overcome her slight impairments, and the Appeals Council affirmed.  Though the Appeals Council delivered its affirmation of the ALJ's decision without explanation, claimant raised this same challenge before the Appeals Council.  R. at 314-15.  The Court assumes that the Appeals Council did consider this issue on the second appeal, because it was a basis for remand of Ms. Stewart's first decision.  R. at 54-56.

The VE's opinion was not merely conclusory.  It is evidence of Ms. Stewart's ability to perform work that is "more than a scintilla."  *Wall*, 561 F.3d at 1052.  Claimant's arguments do not convince this Court that in crediting the opinion of the VE as part of the evidence supporting their decisions, the ALJ and the Appeals Council acted arbitrarily or capriciously.

II.     **Whether the ALJ Properly Weighted the Medical Opinions**

Non-examining Physicians

Ms. Stewart also claims that the ALJ inappropriately relied solely on the opinions of the non-examining physicians.  Plaintiff's challenge to this alleged reliance is without merit.  The ALJ relied on examinations of the claimant by Dr. Rice and by Dr. Bjornstad.  *See, e.g.*, R. at 26

(citing Exhibits 1F & 2F, medical records from Gritman Medical Center and Dr. Rice, and Exhibit 4F, consultative examination by Dr. Bjornstad).

<u>Treating Physician Matthew Rice, D.O.</u>

Ms. Stewart challenges the ALJ's treatment of Dr. Rice's medical opinions.  She claims that the ALJ failed to follow the correct legal standard by not addressing whether Dr. Rice's opinion was controlling under 20 C.F.R. § 416.927(d).  The ALJ did not give Dr. Rice's opinion controlling weight; he explicitly gave it "very little weight."  R. at 28. It is well established that an ALJ need not address each factor under 20 C.F.R. § 416.927(d), expressly or at length, so long as "good reasons" are given in a decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).  The reasons articulated by the ALJ in his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

In this case, the ALJ cited lack of consistency between Dr. Rice's medical opinion and treatment records, as well as inconsistency with other evidence of record, in support of his decision to afford Dr. Rice's opinion little weight.  R. at 28.  The ALJ also noted that he examined the claimant's record of treatment with Dr. Rice and Gritman Medical Center, and that this record did not contain significant evidence of abnormalities or range of motion limitations in claimant's neck, back or other joints.  R. at 26 (citing Exhibits 1F and 2F).  He also details the 2006 findings of examining physician Dr. Bjornstad, which

were largely unremarkable.  *Ibid*.; R. at 206-207.  This is sufficient record support for his

decision to discount Dr. Rice's 2005 opinion.

> Other Source Shari E. Lopez, PA-C

Only information from "acceptable medical sources" can be used to establish the

existence of a medically determinable impairment, though information from sources that are not

"acceptable medical sources" can be used to show the severity of an impairment.  SSR 06-03p,

2006 WL 2329939, *2 (Aug. 9, 2006).  Ms. Lopez is not an "acceptable medical source" because

she is not a licensed physician, licensed or certified psychologist, licensed optometrist, licensed

podiatrist or a qualified speech-language pathologist.  20 C.F.R. § 404.1513(a).  Rather, as a

physicians' assistant she is an "other source" under 20 C.F.R. § 404.1513(d)(1).

Claimant argues that the ALJ failed to follow the correct legal standard for weighting

medical evidence because he did not evaluate Ms. Lopez' opinions using the 20 C.F.R. §

404.1527(d) factors.  Plaintiff incorrectly cites the legal standard.  Social Security Ruling 06-03p

establishes the Administration's policies with respect to information with "other sources"; the

ALJ is permitted but not required to use the 20 C.F.R. § 404.1527(d) criteria to evaluate medical

opinions from sources who are not "acceptable medical sources."  SSR 06-03p at *4 (the 20

C.F.R. § 404.1527(d) factors "can be applied to opinion evidence from 'other sources.'").  It is

paramount for the ALJ to explain the weight given to "other source" opinions or to "otherwise

ensure that the discussion of the evidence in the determination or decision allows a claimant or

subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an

effect on the outcome of the case."  *Id*. at *6.

Plaintiff alleges that the ALJ failed to adequately support his conclusion that Ms. Lopez'

opinions were inconsistent with record evidence.  However, the ALJ offered a number of reasons

for discounting Ms. Lopez' opinion.  First, he noted that Ms. Lopez is not an acceptable medical source as defined under Social Security Regulations.  R. at 28.  He also found that the 2009 Lumbar Spine Impairment Questionnaire was not supported by treatment records and observed that claimant's abilities to undertake daily activities and her lack of muscle atrophy and weakness contradicted Ms. Lopez' findings.  R. at 28.  Ms. Stewart argues that the ALJ was obligated to obtain additional treatment records from Ms. Lopez.  She cites to Social Security regulations requiring the Commissioner to recontact "medical sources" when inadequate evidence is received.  20 C.F.R. § 404.1512(e).  These regulations do not, on their face, require an ALJ to seek additional information from "other sources" and the Court declines to impose such an obligation here.  *Id*.  Rather, the regulations specify that the Commissioner may obtain a consultative examination as an alternative to pursuing additional information.  20 C.F.R. § 404.1512(f).  In this case, the Commissioner obtained a consultative examination from Dr. Bjornstad in 2006.  R. at 201.  The ALJ concluded that Dr. Bjornstad's examination results did not support the scope of Ms. Lopez' prescribed restrictions.  R. at 28, 26.  It was unnecessary for the ALJ to seek additional information from Ms. Lopez given the consultative examination results, even if in some cases it may be advisable to seek such information.

Claimant points to clinical findings of tenderness and back pain cited by Ms. Lopez in her August 2007 Multiple Impairment Questionnaire as support for the limitations Ms. Lopez prescribes.  R. at 279.  Although one could come to a different conclusion regarding whether these clinical findings support the scope of Ms. Lopez' opinion, that "does not prevent an administrative agency's findings from being supported by substantial evidence."  *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).  This Court cannot "reweigh the evidence nor substitute [its] judgment for that of the agency."  *White v. Massanari*, 271 F.3d 1256, 1260 (10th

10

Cir. 2001) (citations omitted).  The Court finds the Commissioner's conclusions regarding the weight afforded to Ms. Lopez' opinions to be supported by substantial evidence.

III.      **Whether the ALJ Properly Evaluated Ms. Stewart's Credibility**

Plaintiff argues that the ALJ should have favorably considered her good work history in his credibility determination.[1]  While the Court agrees that a good work history supports a finding of credibility, it is also true that credibility determination is the province of the ALJ. *Diaz v. Sec'y of Health and Human Services*, 898 F.2d 774, 777 (1990).  Here, the ALJ did consider Ms. Stewart's prior work history in his analysis.  He found that her "ability to sustain the performance of substantial gainful work activity from April of 2006 through December of 2006 does not support her allegations that she has been unable to work since her alleged onset date due to the severity of her impairments."  R. at 29.  Other factors also weighed against her credibility.  The ALJ discussed the medical evidence and lack of objective medical support for her alleged limitations.  R. at 26.  He also found that her alcoholism was not likely in sustained remission and cited her contradictory statements about alcohol use in the record.  R. at 28.

Finally, claimant alleges that the ALJ inadequately considered evidence of relevance to a credibility determination under Social Security Ruling 96-7p.  *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996).  As set forth above, the ALJ articulated adequate evidence-based reasons for his credibility determination.  R. at 26; *see also Stokes*, 274 Fed. Appx at 686.  The Court declines to substitute its judgment for the ALJ's where the facts permit and do not preclude these findings. *White*, 271 F.3d at 1260.

---

[1] Plaintiff cites several sister Courts of Appeals decisions as support for this argument.  The Tenth Circuit recently declined to adopt this bright-line rule, holding that the "only question this court must answer is whether the ALJ's determination that [claimant's] allegations of disabling pain were not credible was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 Fed. Appx 675, 686 (10th Cir. 2008) (unpublished).  Notably, though, persuasive precedent from this District indicates that "it is error for the ALJ not to at least consider Plaintiff's work history in his analysis of Plaintiff's credibility" and that "where a claimant has a good work history, she is entitled to substantial credibility. . . ." *Wegner v. Astrue*, 2009 WL 3158129, *10 (D. Colo. 2009) (unpublished); *Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000).

**Order**

The Commissioner's decision is affirmed.

DATED this 1st day of March, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge